**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1825
_____

ZHI FEI LIAO,
                              Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                              Respondent


_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
Agency No. A074-862-076
Immigration Judge: Honorable Kuyomars Q. Golparvar
_____

Argued October 3, 2018
_____

Before: SHWARTZ, ROTH, and FISHER, <u>Circuit Judges</u>.

(Filed: December 10, 2018)

_____

OPINION

_____

Joshua S. Bolian    [ARGUED]
Robbins Russell Englert Orseck Untereiner & Sauber
2000 K Street, N.W.
4th Floor
Washington, DC 20006

    *Counsel for Petitioner*[**]

Chad A. Readler, Acting Assistant Attorney General
Shelley R. Goad, Assistant Director
Jonathan A. Robbins    [ARGUED]
Office of Immigration Litigation
United States Department of Justice
Civil Division
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

    *Counsel for Respondent*

SHWARTZ, Circuit Judge.

    Zhi Fei Liao petitions for review of a decision of the Board of Immigration Appeals ("BIA") dismissing his appeal

_____

    [**] Attorney for Petitioner appeared pro bono, and his service is in the highest tradition of our profession.  We thank him for his representation in this case.

2

of an Immigration Judge's ("IJ") order removing him from the United States based upon his alleged commission of a "crime of child abuse, child neglect, or child abandonment" under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(E)(i). Because the elements of his crime of conviction, endangering the welfare of a child under 18 Pa. Cons. Stat. § 4304(a)(1), do not match the elements of the crime of "child abuse" under the INA, the order of removal was improperly entered. Therefore, we will grant the petition for review and remand to the BIA for further proceedings.

I

Liao, a native and citizen of China, became a lawful permanent resident of the United States in 2005. On April 18, 2015, Liao had a physical altercation with his girlfriend, Yin Yu. A neighbor called the police, and Yu told the responding police officers that she was holding her infant son, J.Y., while Liao struck her, but that J.Y. was not "hit or hurt" during this encounter. She said, however, that at some point during the fight, J.Y. was placed on the bed and fell from the bed to the floor. Officers arrested Liao, charging him with three offenses, including endangering the welfare of a child in violation of 18 Pa. Cons. Stat. § 4304(a)(1). Liao was convicted and served 106 days of his 90-330 day prison sentence.

Following Liao's release from state custody, the Department of Homeland Security served Liao with a notice that he was subject to removal for, among other things, committing "a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment," which rendered him removable under 8 U.S.C.

3

§ 1227(a)(2)(E)(i).[1]  The IJ ordered Liao's removal, holding that endangering the welfare of children in violation of Pennsylvania law constituted a "crime of child abuse, child neglect, or child abandonment," within the meaning of the INA.[2]  Liao appealed, and the BIA held, in a single member, non-precedential decision, that Liao was subject to removal based on his child endangerment conviction.  Reasoning that the definition of "child abuse" under § 1227(a)(2)(E)(i) "is not limited to offenses that require proof of harm or injury," the BIA held that Pennsylvania's child endangerment crime fell within § 1227(a)(2)(E)(i)'s "broad definition" of child abuse.  Liao petitions for review.

---

[1] Initially, Liao received a notice to appear for removal proceedings that cited his simple assault conviction as the basis for his removal under 8 U.S.C. § 1227(a)(2)(E)(i).  However, following the IJ's determination that it would be "difficult to show" removability based on a violation of Pennsylvania's simple assault statute, J.A. 524, the Government served an amended notice that instead claimed Liao's child endangerment and terroristic threat convictions rendered him removable under § 1227(a)(2)(E)(i).

[2] The IJ also held, in the alternative, that Liao's conviction for making terroristic threats in violation of 18 Pa. Cons. Stat. § 2706(a)(1) was sufficient to remove him under § 1227(a)(2)(E)(i).  The BIA declined to reach the IJ's alternate ground, upholding the removal order solely based on Liao's violation of Pennsylvania's child endangerment statute.

4

## II[3]

### A

When the BIA issues its own opinion on the merits, we review the BIA's decision, not that of the IJ. Mahn v. Att'y Gen., 767 F.3d 170, 173 (3d Cir. 2014) (citations omitted). However, where, as here, the BIA expressly adopts portions of the IJ's opinion, we review both the IJ and BIA decisions. Sandie v. Att'y Gen., 562 F.3d 246, 250 (3d Cir. 2009). Typically, "[w]e review the BIA's legal determinations de novo . . . subject to the principles of deference set forth in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-45 (1984)." Sesay v. Att'y Gen., 787 F.3d 215, 220 (3d Cir. 2015) (citation omitted). When "we are asked to review an unpublished, non-precedential decision issued by a single BIA member," however, we defer to the BIA's legal determinations only insofar as they have the power to persuade. Mahn, 767 F.3d at 173.

### B

Before reaching the merits of Liao's claim, we must determine whether he exhausted his administrative remedies as required by 8 U.S.C. § 1252(d)(2). To obtain judicial review, "an alien is required to raise and exhaust his or her remedies as to each claim or ground for relief." Abdulrahman v. Ashcroft,

---

[3] The IJ had jurisdiction over Liao's immigration proceedings under 8 C.F.R. § 1208.2, and the BIA had jurisdiction over the appeal pursuant to 8 C.F.R. §§ 1003.1(b) and 1240.15. We have jurisdiction over final orders of the BIA under 8 U.S.C. § 1252.

330 F.3d 587, 594-95 (3d Cir. 2003) (internal citations omitted). We do not apply this principle "in a draconian fashion," however. Lin v. Att'y Gen., 543 F.3d 114, 121 (3d Cir. 2008). Under our "liberal exhaustion policy . . . , an alien need not do much to alert the Board that he is raising an issue." Joseph v. Att'y Gen., 465 F.3d 123, 126 (3d Cir. 2006). "[S]o long as an immigration petitioner makes some effort, however insufficient, to place the Board on notice of a straightforward issue being raised on appeal, a petitioner is deemed to have exhausted [his] administrative remedies." Lin, 543 F.3d at 121 (citations omitted).

The purpose of administrative exhaustion "is to ensure that the agency is given an opportunity to resolve issues raised before it prior to any judicial intervention." Hoxha v. Holder, 559 F.3d 157, 163 (3d Cir. 2009) (citation omitted). Thus, the question is not whether the petitioner used magic words from a particular legal standard or even cited to the relevant case law regarding an issue, but rather whether there is "sufficient information available to the Board . . . to put it on notice of the issue being raised." [4] Yan Lan Wu v. Ashcroft, 393 F.3d 418, 422 n.4 (3d Cir. 2005). Therefore, while a petitioner who completely omits an issue fails to meet the exhaustion requirement with respect to that issue, see Abdulrahman, 330

---

[4] The Government is mistaken as to how our liberal exhaustion policy works. It does not require liberally construing a party's pleadings as we must for pro se litigants. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Rather, it requires examining the pleadings expansively to determine whether they alert the BIA to an issue that a party wants to be reviewed. Yan Lan Wu v. Ashcroft, 393 F.3d 418, 422 n.4 (3d Cir. 2005); Abdulrahman, 330 F.3d at 595.

6

F.3d at 595, a petitioner who gives enough information to put the BIA on notice that he is raising an issue has exhausted the issue, and we have jurisdiction to review it.

Here, though Liao did not squarely present in his notice of appeal his claim that the Pennsylvania statute does not require sufficient risk to a child's welfare to be considered a crime of child abuse under § 1227(a)(2)(E)(i), he argued, through counsel, that violation of the "duty of care, protection or support" described under Pennsylvania's child endangerment statute did not require the type of conduct necessary to constitute a "crime of child abuse" under the INA. J.A. 59-61. Liao's argument on this issue was sufficient to notify the BIA not only that he was contesting whether the conviction for child endangerment rendered him removable (the degree of notification required by Yan Lan Wu, 393 F.3d at 422, for exhaustion) but, in addition, that the ground for his position was the contention that the level of risk that must be shown to violate Pennsylvania's child endangerment statute did not correspond with the level of risk needed to commit the crime of child abuse as provided for in the INA.

The BIA's ruling also reflects that it was aware Liao disputed that his conviction rendered him removable and that he challenged whether his crime of conviction constituted the crime of "child abuse" under the INA. The BIA held that it was, which required it to determine whether the Pennsylvania crime met the INA's risk requirement. Thus, the BIA decided the issue we are asked to consider. The BIA's actions further support our conclusion that Liao exhausted his argument, and we have jurisdiction to analyze his assertion that his child endangerment conviction is not categorically a "crime of child

7

abuse" under the INA.   8 U.S.C. §§ 1227(a)(2)(E)(i), 1252(d)(1); Hoxha, 559 F.3d at 163.

## III

## A

Our analysis of Liao's claim requires us to determine the meaning of the phrase "crime of child abuse" under the INA. The INA does not provide a definition but the BIA has interpreted this phrase.

The BIA first defined the phrase "crime of child abuse" in Matter of Velazquez-Herrera, 24 I. & N. Dec. 503, 512 (B.I.A. 2008), interpreting it broadly to encompass:

> any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation. At a minimum, this definition encompasses convictions for offenses involving the infliction on a child of physical harm, even if slight; mental or emotional harm, including acts injurious to morals; sexual abuse, including direct acts of sexual contact, but also including acts that induce (or omissions that permit) a child to engage in . . . sexually explicit conduct . . . .

Building on this definition, in Matter of Soram, 25 I. & N. Dec. at 381-83 (B.I.A. 2010), the BIA interpreted the phrase "crime of child abuse" to also capture some "child endangerment"

8

statutes, which criminalize not just harm to children, but acts that present different levels of risk of harm to children. Specifically, the BIA observed:

> [s]tates use various terms to describe the level of threat required [for violation of their child endangerment statutes], including "realistic," "serious," "reasonably foreseeable," "substantial," or "genuine." Since the meaning of a term such as "substantial" could be subject to different interpretations by courts in each State, we will not attempt to analyze whether the myriad State formulations of endangerment-type child abuse offenses come within the ambit of "child abuse" under [8 U.S.C. § 1227(a)(2)(E)(i)]. Rather, we find that a State-by-State analysis is appropriate to determine whether the risk of harm required by the endangerment-type language in any given State statute is sufficient to bring an offense within the definition of "child abuse" under the Act.

Id. at 382-83. Mindful of these differences, the BIA in Soram analyzed the child endangerment subsection of Colorado's child abuse statute, which makes it illegal to "permit[] a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health." Id. at 379-80 (citing Colo. Rev. Stat. § 18-6-401(1)(a)). Examining the statute's legislative history and case law interpretations, the BIA concluded that the Colorado child endangerment offense was categorically a "crime of child abuse" under the INA, pointing out that it required "a knowing or reckless act" that creates "at

9

least a reasonable probability that the child's life or health will be endangered." Id. at 385-86 (emphases omitted).

In Matter of Mendoza Osorio, 26 I. & N. Dec. 703 (B.I.A. 2016), the BIA examined the New York child endangerment statute[5] to determine whether its "formulation[] of endangerment-type child abuse offenses come[s] within the ambit of 'child abuse,'" Soram, 25 I. & N. Dec. at 383, under the INA. The BIA held that the New York statute's "elements—a knowing mental state coupled with an act or acts creating a likelihood of harm to a child—fit within our definition of a 'crime of child abuse, child neglect, or child abandonment' in section [1227(a)(2)(E)(i)]." Mendoza Osorio, 26 I. & N. Dec. at 706. In reaching this holding, the BIA recognized that:

> there are child endangerment statues that do not require a sufficiently high risk of harm to a child to meet the definition of child abuse, neglect, or abandonment under the Act. For example, the child endangerment statute at section 273a(b) of the California Penal Code criminalizes conduct that places a child "in a situation where his or her person or health may be endangered." (Emphasis added.) In Fregozo v. Holder, 576 F.3d 1030 (9th Cir. 2009), the Ninth Circuit held that this

---

[5] Section 260.10(1) of the New York Penal Law provides, in pertinent part, that "[a] person is guilty of endangering the welfare of a child when . . . [h]e or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old . . . ."

statute did not categorically define a "crime of child abuse" within the meaning of the Act. The court observed that the statute does not "require that the circumstances create any particular likelihood of harm to a child" and punishes "conduct that creates only the bare potential for nonserious harm to a child." Id. at 1037-38. In this regard, the court cited as an example of facts that did not meet our definition of child abuse the case of a parent "placing an unattended infant in the middle of a tall bed without a railing, even though the child was never injured." Id. Based on the facts as construed by the court, we would agree that they do not, alone, define a crime of child abuse or neglect.

Id. at 711. Thus, to qualify as a crime of child abuse under the INA, a state child endangerment offense must require that the actor's conduct "create [a] particular likelihood of harm to the child" that rises above "conduct that creates only the bare potential for nonserious harm. . . ." Id. (internal citation and quotation marks omitted). As a result, where a state child endangerment statute fails to require "any particular likelihood of harm to a child," id. (quoting Fregozo, 576 F.3d at 1037), it falls outside the ambit of the INA's "child abuse" offense.

Recognizing that the phrase "child abuse" has different meanings in different states, and that child abuse in this context is meant to address conduct that is criminal, it is appropriate to define the phrase "child abuse" under the INA to capture conduct that poses a particular likelihood of harm to the child. Using this definition, we next examine whether the Pennsylvania child endangerment statute constitutes a "crime

11

of child abuse" under § 1227(a)(2)(E)(i). If so, then a conviction under the Pennsylvania statute provides a basis for removal.

B

To decide whether a state conviction qualifies as a basis for removal under the INA, we "employ a 'categorical approach' to determine whether the state offense is comparable to [the] offense listed in the INA." Moncrieffe v. Holder, 569 U.S. 184, 190 (2013); see also Descamps v. United States, 570 U.S. 254, 257 (2013) (describing categorical approach generally). Because we focus on the elements of the offense of conviction, a petitioner's specific conduct that led to the conviction is "irrelevant." Moncrieffe, 569 U.S. at 190 (citation omitted).

Under Pennsylvania law, "[a] parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa. Cons. Stat. § 4304(a)(1). In construing this provision, the Pennsylvania Supreme Court has stated that, notwithstanding the rule of lenity typically applied to penal statutes, the child endangerment provision "must be construed to effectuate its broad purpose of sheltering children from harm. Specifically, the purpose of such juvenile statutes is defensive; they are written expansively by the legislature to cover a broad range of conduct in order to safeguard the welfare and security of our children." Commonwealth v. Lynn, 114 A.3d 796, 818 (Pa. 2015) (internal citations and quotation marks omitted).

12

Pennsylvania's child endangerment statute has thus been construed to "impose[] a duty on parents and other caretakers to not risk any kind of harm, not just bodily injury, to a minor child in his or her care." Commonwealth v. Coppedge, 984 A.2d 562, 563 (Pa. Super. Ct. 2009) (examining the elements of Pennsylvania's child endangerment offense to determine if it merged with simple assault). Thus, "a conviction for endangering the welfare of children only requires proof of circumstances that could threaten the child's physical or psychological welfare." Commonwealth v. Martir, 712 A.2d 327, 330 (Pa. Super. Ct. 1998)[6]; see also Commonwealth v.

---

[6] In Martir, the Pennsylvania Superior Court examined the question of whether a conviction for child endangerment merges for sentencing purposes with, as a lesser included offense, a conviction for reckless endangerment. 712 A.2d at 328. The reckless endangerment statute in question provided, in full, that "[a] person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa. Cons. Stat. § 2705. The court held that the convictions did not merge, reasoning, as relevant for our purposes, that:

> [a] conviction for reckless endangerment requires proof of conduct that places or may place another person in danger of death or serious bodily injury, while a conviction for endangering the welfare of children only requires proof of circumstances that could threaten the child's physical or psychological welfare. Thus, reckless endangerment requires

13

<u>Young</u>, No. 2556 EDA 2015, 2017 WL 238469, at *4 (Pa. Super Ct. 2017) (not precedential) (observing that the child endangerment offense requires only "proof of circumstances that could threaten the child" (quoting <u>Martir</u>, 712 A.2d at 330)).[7]

---

> proof of a fact that endangering the welfare of children does not. In other words, the element of conduct which places or may place a person in danger of death or serious bodily injury is not subsumed within proof that a child is placed in circumstance[s] that could threaten the child.

<u>Martir</u>, 712 A.2d at 329-30.

[7] Citing to <u>Commonwealth v. Wallace</u>, 817 A.2d 485, 490 (Pa. Super. Ct. 2002), the Government contends that Pennsylvania "caselaw has in fact narrowed the [child endangerment] statute to proscribe practical certainty that conduct threatens a child's physical or psychological welfare." Aug. 15 DOJ Letter at 2. The Government is mistaken. The passage the Government refers to was discussing the mental state required for conviction under the statute, stating that "it is the awareness by the accused that his violation of his duty of care, protection and support is 'practically certain' to result in the endangerment to his children's welfare, which is proscribed by the statute." <u>Wallace</u>, 817 A.2d at 492 (citing 18 Pa. Cons. Stat. § 302(b)(2) (describing "general requirements of culpability" under Pennsylvania criminal law)). The present dispute does not concern the mental state required to commit the offense; rather, what is at issue here is the meaning of "endangerment," which <u>Wallace</u> defines as putting "at risk of danger," specifying that neither "actual infliction" nor

Comparing the Pennsylvania child endangerment statute to the offense of "child abuse" under the INA reveals a difference between each statute's risk requirements. Whereas the Pennsylvania statute merely requires conduct that "could threaten" a child's "welfare," Martir, 712 A.2d at 330, "child abuse" under the INA requires "a likelihood of harm to [the] child." Mendoza Osorio, 26 I. & N. Dec. at 706. The BIA has not identified a specific risk level, but it does embrace the view that a statute that does not "'require . . . any particular likelihood of harm to a child'" would not include "a sufficiently high risk of harm to a child" to qualify as INA child abuse. Id. at 711 (quoting Fregozo, 576 F.3d at 1037-38). This required risk level places a reasonable limitation on the offenses that constitute "child abuse" under the INA. Florez v. Holder, 779 F.3d 207, 212 (2d Cir. 2015).

Like the California statute our sister circuit examined in Fregozo, the Pennsylvania statute lacks an element requiring proof of a "sufficiently high risk of harm." Mendoza Osorio, 26 I. & N. Dec. at 711 (emphasis omitted). The Pennsylvania statute makes it illegal to place the child in "circumstances that could threaten [his or her] welfare." Martir, 712 A.2d at 330. The California statute makes it illegal to place a child "in a situation where his or her person or health may be endangered." Fregozo, 576 F.3d at 1037 (quoting Cal. Penal Code § 273a(b)). Like the California statute, the Pennsylvania

---

"imminent threat of physical injury" to the child is required for conviction under 18 Pa. Cons. Stat. § 4304(a)(1), id. at 491-92, and which other Pennsylvania courts have defined as conduct that "could threaten" a child's welfare. Martir, 712 A.2d at 330.

15

statute does not specify "any particular likelihood of harm to a child" required for violation. Mendoza Osorio, 26 I. & N. Dec. at 711 (internal citation omitted). Because "child abuse" under the INA requires a specified risk of harm that rises above conduct that creates only the bare potential for non-serious harm, id., and the Pennsylvania child endangerment statute in effect at the time of Liao's conviction did not,[8] the elements of the two statutes do not match. As a result, under the categorical approach, Pennsylvania's child endangerment statute under which Liao was convicted does not fit within the definition of "child abuse" under § 1227(a)(2)(E)(i), and the BIA erred in concluding otherwise.

C

The Government claims that we must also engage in a "realistic probability" inquiry, examining convictions under the state statute to assess "whether the statute is actually applied to conduct that falls outside of the federal definition," Resp't's Br. at 31-32, before concluding the statute does not

---

[8] In 2017, the grading portion of the Pennsylvania child endangerment statute was amended to state that any violation that posed "a substantial risk of death or serious bodily injury" would make the offense a felony. See Pa. Act of June 29, 2017, P.L. 246, No. 12 (H.B. 217) (noting previous statutory language). Thus, a conviction under the felony provision of the endangerment statute would qualify as a crime of child abuse under the INA because it requires proof of a substantial risk of death or serious bodily injury.

16

qualify as INA child abuse.[9]  The Government argues that we are bound to undertake this analysis because <u>Gonzalez v. Duenas-Alvarez</u>, 549 U.S. 183, 193 (2007), dictates that there should be "a realistic probability, not a theoretical possibility" that the state statute would be applied to such conduct. Resp't's Br. at 31.

Contrary to the Government's assertion, it is unnecessary to conduct a realistic probability inquiry in every case.  In <u>Singh v. Attorney General</u>, 839 F.3d 273, 285-86 (3d Cir. 2016), we held that the BIA erred in conducting a "realistic probability" inquiry where the elements of petitioner's controlled substance conviction under Pennsylvania state law

---

[9] In its August 15, 2018 Rule 28(j) letter, the Government admitted that the "realistic probability" test is not necessary where the text of the statutory provision plainly covers a broader swath of conduct than the generic federal offense, but argued that the test is required in all other instances, seemingly regardless of how courts articulate the statute's elements.  When pressed on this position at oral argument, the Government admitted that one could look to the elements courts apply in comparing the elements of a state offense with the generic federal offense, but nevertheless maintained that a realistic probability test was necessary here. Oral Argument at 18:40, <u>Liao v. Att'y Gen.</u>, No. 17-1825, http://www2.ca3.uscourts.gov/oralargument/audio/17-1825Liaov.AttyGenUSA.mp3.  For the reasons discussed in the text, we conclude that it is unnecessary to apply the realistic probability test where the elements of the offense, whether as set forth in a statute or case law, do not match the generic federal crime.

17

did not match the elements of the generic federal offense of illicit trafficking in a controlled substance because it was only appropriate to apply such an analysis where the elements of the compared offenses matched. Moreover, we observed that "[t]he Supreme Court has never conducted a 'realistic probability' inquiry" where the elements of the crime of conviction are not the same as the elements of the generic federal offense.[10] Id. at 286 n.10; see also Salmoran v. Att'y Gen., No. 17-2683, 2018 WL 6166242, at *7 (3d Cir. Nov. 26, 2018) (holding that no realistic probability analysis is necessary where the state statute "plainly encompasses more conduct than its federal counterpart").

In this case, we are not confronted with a situation in which there is no guidance as to how the statute applies. As explained above, Pennsylvania does not require any particular level of risk to violate its child endangerment statute, and thus, there is a difference between the risk element under the Pennsylvania child endangerment statute and the INA child abuse statute, making further inquiry into the law's application unnecessary. Put simply, the elements leave nothing to the "legal imagination," Duenas-Alvarez, 549 U.S. at 193, because they show that one statute captures conduct outside of the other. Therefore, we need not carry out a "realistic probability" inquiry to conclude that a conviction for a violation of

---

[10] Only where the state statute offers insufficient guidance as to its application is further analysis needed to address whether the state applied its statute in a way that captured conduct outside of the federal statute's scope. Moncrieffe, 569 U.S. at 191-95; Duenas-Alvarez, 549 U.S. at 193.

18

§ 4304(a)(1) does not constitute a removable "crime of child abuse, child neglect, or child abandonment" under § 1227(a)(2)(E)(i).[11]

---

[11] Our sister circuit courts have also held that the "realistic probability" inquiry is unnecessary where the elements of the offenses do not match. See Hylton v. Sessions, 897 F.3d 57, 64 (2d Cir. 2018) (evaluating whether a state conviction for sale of marijuana in the third degree constituted an INA aggravated felony, and concluding that "[b]y demanding that Hylton produce old state cases to illustrate what the statute makes punishable by its text, the Government's argument misses the point of the categorical approach and wrenches the Supreme Court's language in Duenas Alvarez from its context" (internal quotation marks and citations omitted)); United States v. Titties, 852 F.3d 1257, 1274-75 (10th Cir. 2017) (determining applicability of Armed Career Criminal Act ("ACCA") sentencing enhancement based on prior convictions, and concluding, in spite of Government's contention that a "realistic probability" inquiry was necessary, that "[t]his is not a case where we need to imagine hypothetical non-violent facts to take a statute outside of the ACCA's ambit. . . . The Government gives no persuasive reason why we should ignore [the statute's] plain language to pretend [it] is narrower than it is."); Swaby v. Yates, 847 F.3d 62, 66 (1st Cir. 2017) ("[Duenas-Alvarez's] sensible caution against crediting speculative assertions regarding the potentially sweeping scope of ambiguous state law crimes has no relevance to a case like this [where the state law at issue unambiguously covered one drug not on the federal schedules, as relevant for removal eligibility under the INA]. The state crime at issue clearly does apply more broadly than the

federally defined offense."); United States v. Aparicio-Soria, 740 F.3d 152, 157-58 (4th Cir. 2014) (en banc) (rejecting Government's argument that a "realistic probability" inquiry is necessary because "this case does not require an exercise of imagination, merely mundane legal research skills: we have precedent from Maryland's highest court" confirming that the state offense of resisting arrest captures conduct outside the scope of "crimes of violence" under the United States Sentencing Guidelines); Ramos v. Att'y Gen., 709 F.3d 1066, 1071-72 (11th Cir. 2013) (examining whether a state theft conviction qualified as an aggravated felony rendering an alien removable under the INA and observing that "Duenas-Alvarez does not require [a realistic probability] showing when the statutory language itself, rather than 'the application of legal imagination' to that language, creates the 'realistic probability' that a state would apply the statute to conduct beyond the generic definition."); United States v. Grisel, 488 F.3d 844, 850 (9th Cir. 2007) (en banc) (evaluating whether Oregon second-degree burglary conviction fell under the ACCA's "violent felony" mandatory minimum, and noting "[w]here, as here, a state statute explicitly defines a crime more broadly than the generic definition, no 'legal imagination' is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime." (internal citation omitted)). But see United States v. Castillo-Rivera, 853 F.3d 218, 222, 239 (5th Cir. 2017) (en banc) (applying the "realistic probability" test to hold that a Texas conviction for unlawful possession of a firearm constituted an aggravated felony for sentencing purposes, even though it would, as the dissent explained, "require a defendant to disprove the inclusion of a statutory element that the statute plainly does not contain").

## IV

For the foregoing reasons, we will grant the petition and remand for the BIA to consider the alternative ground on which the IJ found Liao removable.