**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 20-2651

———————

ANTONIO DEJESUS NUNEZ,
Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA

———————

On Petition for Review of an Order of the
Board of Immigration Appeals
(BIA-1: A061-038-927)
Immigration Judge: Jason Pope

———————

Argued April 21, 2021

Before: AMBRO, RESTREPO, Circuit Judges, and
NOREIKA,* District Judge
(Opinion Filed: May 26, 2022)

———————

* The Honorable Maryellen Noreika, United States District Judge
for the District of Delaware, sitting by designation.

Thomas E. Moseley (Argued)
One Gateway Center
Suite 2600
Newark, NJ 07102

Counsel for Petitioner

Jeffrey Bossert Clark
John W. Blakely
Elizabeth Fitzgerald-Sambou (Argued)
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

Counsel for Appellee

---

OPINION OF THE COURT

---

NOREIKA, <u>District Judge</u>

Petitioner Antonio DeJesus Nunez seeks review of a final order by the Board of Immigration Appeals dismissing his appeal from an Immigration Judge's determination that he is removable from the United States and ineligible for cancellation of removal. For the following reasons, the petition will be denied.

## I.    Background

Nunez is a fifty-two-year-old native and citizen of the Dominican Republic who, since February 2010, has been a lawful permanent resident of the United States. In March 2019, he was charged in the Superior Court of New Jersey with four crimes.[1] According to the charging documents, between January 1, 2013 and December 3, 2018, Nunez used physical force or coercion to "grab the victim's breast over the clothing for means of sexual gratification," "expos[ed] his bare penis to the victim while in the bathroom of the victim's residence," and engaged in "sexual conduct which impaired or debauched the morals of the victim." A.R. 566–67. Nunez was between forty-three and forty-nine years old during this time and the victim was between eight and fourteen years old.

In May 2019, Nunez pled guilty to and was convicted of one count of endangering the welfare of a child in the third degree, in violation of N.J. Stat. § 2C:24-4(a)(1). That statute prohibits "engag[ing] in sexual conduct which would impair or debauch the morals of [a] child." N.J. Stat. § 2C:24-4(a)(1). He was sentenced to time served of 168 days of imprisonment.

### A.    Proceedings Before the Immigration Court

The Department of Homeland Security ("DHS") initiated removal proceedings against Nunez on September 23,

---

[1] Nunez was charged with violating N.J. Stat. § 2C:14-2b (sexual assault with a victim less than 13 years old where the actor is at least four years older than the victim), § 2C:24-4a(1) (endangering the welfare of a child), § 2C:14-3b criminal sexual contact), and § 2C:14-4b(1) (lewdness).

2019 by filing a Notice to Appear ("NTA") with the Immigration Court. The NTA charged Nunez with removability under 8 U.S.C. § 1227(a)(2)(E)(i), which provides in relevant part that "[a]ny alien who at any time after admission is convicted of . . . a crime of child abuse . . . is deportable."[2]  8 U.S.C. § 1227(a)(2)(E)(i). Factual allegation four of the NTA indicated that, on May 20, 2019, Nunez had been "convicted in the Superior Court of New Jersey, Middlesex County, for the offense of Endangering-Sexual Conduct With Child By Non-Caretaker, committed on or between January 1, 2013 and December 3, 2018 in violation of N.J.S.A. 2C:24-4a(1)." A.R. 727.

In a hearing on October 3, 2019, Nunez appeared represented by counsel and admitted the factual allegations in the NTA but denied removability. He then filed a motion to terminate removal, arguing that, pursuant to this Court's ruling in *Liao v. Att'y Gen.*, 910 F.3d 714 (3d Cir. 2018), the state offense of endangering the welfare of a child did not constitute a crime of child abuse within the meaning of 8 U.S.C. § 1227(a)(2)(E)(i) because the state offense does not criminalize "conduct that poses a particular likelihood of harm to the child." *Liao*, 910 F.3d at 721. In a written decision, the Immigration Judge ("IJ") held that a violation of N.J. Stat. § 2C:24-4(a)(1) is categorically a crime of child abuse because, under New Jersey state law, a conviction requires proof that the "defendant knowingly engaged in sexual conduct with the victim, which would impair or debauch the morals of a child."

---

[2] Although the NTA also charged Nunez with removability under § 1227(a)(2)(A)(i), for a crime involving moral turpitude committed within five years after admission, that charge was later withdrawn.

4

A.R. 63 (citing New Jersey Model Jury Instructions, Endangering the Welfare of a Child, Sexual Conduct (Third Degree), N.J. STAT. ANN. § 2C:24-4(a)(1) (Apr. 7, 2014)). The IJ reasoned that "[t]he use of the term 'would' indicates that the conduct must rise above 'conduct that creates only the bare potential for non-serious harm.'" A.R. 66 (quoting *Liao*, 910 F.3d at 720). Therefore, the IJ sustained the charge of removability.

Nunez then moved for cancellation of removal under 8 U.S.C. § 1229b(a), which requires proof that the applicant "(1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony." 8 U.S.C. § 1229b(a). The Government moved to pretermit the application for cancellation of removal due to the "stop-time" rule, which provides that the accrual of continuous residence stops upon the commission of certain offenses. 8 U.S.C. § 1229b(a)(2), (d)(1)(B). The Government argued that Nunez failed to accrue the necessary seven years of continuous residence because he was admitted to the United States on February 14, 2010 and convicted of a count which provided that he engaged in the criminal conduct "between about January 1, 2013 and December 3, 2018." A.R. 154. Nunez's counsel moved for a continuance, explaining that he had received the motion to pretermit only three days before the hearing, that he needed time to review a possible psychological evaluation of Nunez, and that his preparation for the hearing was impaired because his wife had died suddenly two months prior and his associate attorney had been recently absent. He also noted that the Government had initially suggested that Nunez would be eligible for cancellation of removal. The IJ

5

denied the request for a continuance, finding that the matter did not require further briefing and could be decided based on the evidence already in the record. The IJ also noted that Nunez's counsel had been aware of the potential impact of the conviction and that the Government had indicated it would further review the question of Nunez's eligibility for cancellation and had not waived such an argument.

At the February 21, 2020 hearing on the Government's motion to pretermit, Nunez testified about the timing of the conduct underlying his conviction. He stated that the conduct involved in the offense was "sending a video" and that he was "not in [his] five senses" and was "drunk" at the time, but that it occurred in October of 2018. A.R. 140. On cross-examination, the Government asked Nunez if the count to which he pled guilty referenced "a range of dates from 2013 to 2018," to which he responded "I don't remember. I just remember the one related to the video." A.R. 140–41. The IJ concluded that Nunez's testimony was self-serving and contradicted his prior admission that the acts in the state court matter had occurred. Therefore, although the IJ did not enter an adverse credibility finding, he declined to enter a finding that Nunez's testimony was credible. The IJ then found that Nunez's conviction was for a continuing offense which began on January 1, 2013 as indicated in allegation four of the NTA, and agreed with the Government that the stop-time rule was triggered on that date. Incorporating by reference the earlier decision that the state conviction was a crime of child abuse, the IJ concluded that Nunez was removable and ineligible for cancellation of removal.

B.      Proceedings Before the Board of Immigration Appeals

Nunez appealed to the Board of Immigration Appeals in March 2020, once again arguing that the state court offense was not a crime of child abuse under *Liao*. He further argued that the IJ erred in denying the requested continuance and in finding that the state offense was committed prior to the accrual of seven years of continuous residence. The Board upheld the IJ's decision in a single member non-precedential decision. This petition for review followed.

## II.      Discussion[3]

Where the Board issues its own decision and relies upon the reasoning of an immigration judge, this Court reviews the decision of the Board and those portions of the immigration judge's reasoning adopted in the Board's opinion. *See Patel v. Att'y Gen.*, 599 F.3d 295, 297 (3d Cir. 2010).

In his appeal before this Court, Nunez again raises the two issues argued before the Board: first, that his state offense is not a "crime of child abuse" because it lacks the required particular likelihood of harm to a child; and, second, that the Board erred in sustaining pretermission of his motion for cancellation of removal because there was insufficient evidence that he committed the crime before accruing the necessary seven years of continuous residence. We address each of these issues in turn.

---

[3] The Board had jurisdiction under 8 C.F.R. § 1003.1(b)(3). This Court has jurisdiction to review the Board's decision under 8 U.S.C. § 1252(a).

## A.     Removability

It is well-established that the criminal statute at issue must require a "particular likelihood" of harm to the child in order to constitute child abuse under 8 U.S.C. § 1227(a)(2)(E)(i).  *Liao*, 910 F.3d at 721.  Nunez argues, as he did below, that the New Jersey statute under which he was convicted does not require any particular likelihood of harm and therefore that his conviction cannot sustain the charge of removability.  In response, the Government contends that both the plain language of the statute and controlling New Jersey case law show that a conviction requires proof that harm to a child is likely.

Typically, legal determinations by the Board are reviewed *de novo*, subject to principles of *Chevron* deference.  *Liao*, 910 F.3d at 718 (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843–45 (1984)).  In an appeal from an unpublished, non-precedential decision by a single Board member, however, "we defer to the BIA's legal determinations only insofar as they have the power to persuade." *Id.*

When deciding whether a state conviction qualifies as a basis for removal under the Immigration and Nationality Act ("INA"), this Court "employ[s] a 'categorical approach' to determine whether the state offense is comparable to an offense listed in the INA." *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013); *see also Liao*, 910 F.3d at 721.  The categorical approach "blinds us to the facts" of a defendant's actual conduct and requires that we look only at the elements necessary for conviction. *Cabeda v. Att'y Gen.*, 971 F.3d 165, 167 (3d Cir. 2020).

8

Here, we need not consider every section of N.J. Stat. § 2C:24-4. Nunez pled guilty to and was convicted of subsection (a)(1), argued below that only that subsection need be considered, A.R. 25, and does not currently contest the statute's divisibility.[4]

As with all exercises in statutory interpretation, we begin with the language of the statute, which prohibits "engag[ing] in sexual conduct which would impair or debauch the morals of [a] child."[5] N.J. Stat. § 2C:24-4(a)(1). This Court previously adopted the Board's definition of "child abuse" as including "mental or emotional harm, including acts injurious to morals." *Mondragon-Gonzalez v. Att'y Gen.*, 884 F.3d 155, 159 (3d Cir. 2018) (quoting *Matter of Velazquez-Herrera*, 24 I. & N. Dec. 503, 512 (BIA 2008)). Thus, the New Jersey statute's reference to "the morals of [a] child" addresses a type of harm contemplated by the INA. Furthermore, the statute's use of *would* rather than *could* denotes that it prohibits conduct that has some likelihood, rather than mere capacity, of impairing a child's morals. That is consistent with the ordinary

---

[4] This Court has previously held, in a case involving a conviction under the same subsection of the statute, that N.J. Stat. § 2C:24-4 is divisible. *Sanchez v. Att'y Gen.*, 757 F. App'x 142, 145 (3d Cir. 2018).

[5] In contrast, the statute at issue in *Liao* states: "[a] parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." *Liao*, 910 F.3d at 721 (quoting 18 Pa. Cons. Stat. 4304(a)(1)).

meaning of *would*, which is used "to express probability or presumption." *The Merriam–Webster Dictionary, Would,* https://www.merriam-webster.com/dictionary/would (last visited Jan. 3, 2021).[6] Thus, the plain text of the statute suggests a likelihood of harm is required for conviction.

That meaning is confirmed by New Jersey case law on the issue. In *State v. Hackett*, the Supreme Court of New Jersey considered a case in which the defendant had been convicted under § 2C:24-4(a) after two eleven-year-old girls and one thirteen-year-old girl had, at various times, seen him standing nude in his home within clear view of the front window on approximately eleven total occasions, including one in which he "posed." 764 A.2d 421, 423 (N.J. 2001). In concluding that the statute does not require proof of actual harm to a minor, the court focused on the text of the statute, indicating that "[t]he word 'would' signals the futurity of a *likely* event." *Id.* at 428 (emphasis added). The court also noted that the predecessor to § 2C:24-4(a) had applied to conduct "which tends to debauch the child or impair its morals," N.J. Stat.§ 2A:96-3, and

---

[6] This Court has cautioned against relying on dictionary definitions to adopt overly narrow interpretations of statutes, particularly when doing so means ignoring conflicting definitions. *See Bonkowski v. Oberg Indus., Inc.*, 787 F.3d 190, 199–201 (3d Cir. 2015). In this case, however, only one of the listed definitions of *would* makes sense in the context of N.J. Stat. § 2C:24-4(a)(1). And indeed, that definition is consistent with how this Court has previously interpreted 2C:24-4(a)(1), noting that the "statute reaches only 'sexual conduct' that *will* 'impair or debauch' the child's morals," not simply conduct that could do so. *See Sanchez*, 757 F. App'x at 146 (emphasis added).

concluded that "the altered statutory language 'which would impair or debauch the morals of a child' [did not] heighten[] the proof required." *Hackett*, 764 A.2d at 428. In discussing the type of proof required, the *Hackett* court also adopted the "tendency" requirement of the predecessor statute: "determination of whether specific conduct *has the tendency to* impair or debauch the morals of the average child is not 'beyond the ken of the average juror.'" *Id.* at 429 (emphasis added). Further, the court cited with approval the newly-revised Model Jury Charge for § 2C:24-4(a), which read "[s]exual conduct [that] would impair or debauch the morals of a child is conduct which *tends to corrupt, mar or spoil the morals of a child under sixteen (16) years of age.*" *Id.* at 432 (emphasis in original). The *Hackett* court's interpretation of the statutory language and its discussion of the "tendency" to harm confirm that a conviction under § 2C:24-4(a) requires proof of a likelihood of harm.

Nunez argues that, under *Hackett*, § 2C:24-4(a) requires merely the capacity for harm, pointing to the court's statement of its express holding: "[w]e hold that based on the testimony offered, a jury could conclude beyond a reasonable doubt that Hackett's conduct *had the capacity to* impair or debauch the morals of a minor." *Id.* at 423 (emphasis added). This argument, however, ignores that *Hackett* focused on a different issue than our inquiry today. Although we must determine whether the statute requires more than mere capacity to harm, the *Hackett* court considered whether the statute requires proof of actual harm. *See id.* at 428. Thus, *Hackett*'s discussion of capacity serves to differentiate potential or likely harm from actual harm, which the lower court had required. This ambiguous usage of "capacity" is clearest in the discussion of the jury's role:

11

> In our view, this jury had the ability to discern whether the conduct that occurred had the *capacity to* debauch or impair the morals of an average child in the community. The question is not whether the victims of the alleged endangering actually had their morals impaired or debauched, but whether the actor's "sexual conduct" was conduct that *likely would* impair or debauch the morals of a child in the community.

*Id.* at 430 (emphasis added). When read in context, the language cited by Nunez refers, albeit perhaps imprecisely, to the fact that § 2C:24-4(a) does not require proof of actual harm. Rather, the statute requires proof of tendency to harm, which meets the requirement of "likelihood" established by this Court in *Liao*.

Nunez further argues that the New Jersey Appellate Division decision in *State v. Bryant* establishes that only the capacity for harm is needed under § 2C:24-4(a). 15 A.3d 865 (N.J. Super. App. Div. 2011. Although *Bryant* does refer to capacity, it again does so in a different context than our analysis in this case. The *Bryant* court faced whether a conviction under § 2C:24-4(a) requires the defendant to know the effect his conduct would have on the victim. *Id.* Because the court's analysis focused on the victim's mental state, the language regarding capacity or likelihood of harm is unclear.

12

The court alternately referred to capacity, *id.* at 866, 868, 870, 874, and to whether the conduct "would" or "tended to" impair or debauch the morals of the child, *id.* at 866, 868, 869, 871, 872, 873, 874. Indeed, the court used the two seemingly conflicting wordings in close proximity, noting that "it makes little sense to require the actor to know that his conduct would cause" the victim harm and concluding that the statute does not require knowledge that the defendant's "conduct would impair or debauch the victim's morals," and in the very next sentence stating that the state would have to prove only that "such conduct had the capacity to impair or debauch the child's morals." *Id.* at 874. Like the *Hackett* court, the court in *Bryant* quoted extensively from the legislative history of the statute, none of which refers to a mere capacity for harm. *See id.* at 871–72. Furthermore, nowhere does *Bryant* suggest that the court is departing from or changing the level of proof required by *Hackett*. Indeed, it could not, as *Bryant* is not a decision from New Jersey's highest appellate court. Thus, nothing in *Bryant* suggests that the interpretation of § 2C:24-4(a) has changed since the New Jersey Supreme Court's decision in *Hackett*.

Both the plain language of the statute and the controlling state law on the issue demonstrate that a conviction under § 2C:24-4(a) requires proof that the defendant's conduct has a "particular likelihood" to cause harm to the child, as is required under *Liao*, 910 F.3d at 721. Therefore, the statute categorically meets the definition of child abuse and Nunez's conviction is sufficient to sustain the charge of removability under 8 U.S.C. § 1227(a)(2)(E)(i).

13

## B. Eligibility for Cancellation of Removal

Nunez next argues that, even if he is removable, the Board erred in sustaining the IJ's pretermission of his cancellation application because there was insufficient evidence that he committed the crime before accruing the necessary seven years of continuous residence. We review such factual findings under the substantial evidence standard, meaning we will not disturb the findings of the Board unless "any reasonable adjudicator would be compelled to conclude to the contrary." *Mendoza-Ordonez v. Atty. Gen. of U.S.*, 869 F.3d 164, 169 (3d Cir. 2017) (citing 8 U.S.C. § 1252(b)(4)(B).

Here, we are satisfied that there was substantial evidence that Nunez committed the crime within seven years of being admitted to the United States on February 14, 2010. Nunez pled guilty to a charge stating that the offense took place "on or between about January 1, 2013 and December 3, 2018." A.R. 566. Although Nunez did not admit to the IJ or the Board the timing of the conviction, the fact that he pled guilty to a charge indicating a date as early as 2013 is itself persuasive. As the Board noted, New Jersey prosecutors use the "on or between" formulation to allege ongoing or continuing violations. A.R. 5–6. Nunez's sole citation to the contrary is to a federal case, that has no relevance to the practices of New Jersey state prosecutors. Finally, although Nunez testified before the IJ that the charged conduct occurred in October 2018, the IJ found the testimony self-serving and declined to find Nunez credible. That determination has sufficient support in the record to warrant deference. *See Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003).

14

Thus, the Board's decision to affirm the pretermission of Nunez's cancellation application was based on substantial evidence.

Lastly, we will briefly address Nunez's argument that the IJ erred in denying a continuance before ruling on the motion for cancellation of removal. Although this argument received a scant two sentences in each of Nunez's brief to the Board and in his opening brief to this Court, we have adopted a "liberal exhaustion policy [where] an alien need not do much to alert the Board that he is raising an issue." *Liao*, 910 F.3d at 718. We review an IJ's denial of a continuance for abuse of discretion, *Hashmi v. Att'y Gen.*, 513 F.3d 256, 259 (3d Cir. 2008), and are satisfied that there was no such abuse here. As the IJ explained, Nunez's counsel had been aware of the potential impact of the conviction and although the Government had initially suggested that Nunez might be eligible for cancellation of removal, it had also indicated it would further review the issue. Therefore, the IJ's decision fell within the bounds of his discretion.

\* \* \*

For the foregoing reasons, the petition for review is denied.

AMBRO, <u>Circuit Judge</u>, dissenting

Sometimes the logic of the categorical approach is so counterintuitive it would vex even Wittgenstein. This is one such occasion. The conduct Antonio DeJesus Nunez allegedly committed was deplorable. If considered alone, it would easily qualify as a "crime of child abuse" under the Immigration and Nationality Act (INA) and warrant deportation. *See* 8 U.S.C. § 1227(a)(2)(E)(i) ("Any alien who at any time after admission is convicted of . . . a crime of child abuse . . . is deportable."). But under the categorical approach, Nunez's "specific conduct . . . is 'irrelevant.'" *Liao v. Att'y Gen.*, 910 F.3d 714, 721 (3d Cir. 2018) (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013)). We must instead decide whether a violation of New Jersey's child endangerment statute, N.J. Stat. Ann. § 2C:24-4(a)(1), under which Nunez was convicted, categorically qualifies as a "crime of child abuse" for purposes of the INA. Because I part from my colleagues' conclusion that such a violation so qualifies, I respectfully dissent.

In *Liao* we held that, to qualify as a "crime of child abuse" under the INA, a state offense must require a "sufficiently high risk of harm to a child." 910 F.3d at 722 (internal quotation marks omitted). In that case, we decided that a Pennsylvania child endangerment statute was not a "crime of child abuse" for purposes of the INA because the Pennsylvania courts construed that statute broadly to "only require[] proof of circumstances that *could* threaten the child's physical or psychological welfare." *Id.* at 721 (quoting *Commonwealth v. Martir*, 712 A.2d 327, 330 (Pa. Super. Ct. 1998)) (emphasis added). Because the BIA had interpreted "child abuse" under the INA to require a "particular likelihood of harm to [the] child," we reasoned, a state statute covering

1

conduct that *could* threaten a child is not a categorical match. *Id*. at 721–23 (quoting *Matter of Mendoza Osorio*, 26 I.& N. Dec. 703, 711 (BIA 2016)).

As with the statute at issue in *Liao*, New Jersey's child endangerment statute has been construed broadly. In *State v. Hackett*, 764 A.2d 421 (N.J. 2001), the New Jersey Supreme Court expressly held conduct with merely the "capacity" to impair a child's morals violates § 2C:24-4(a)(1). *See id.* at 423 ("We hold that based on the testimony offered, a jury could conclude beyond a reasonable doubt that Hackett's conduct had the capacity to impair or debauch the morals of a minor."). I read the term "capacity" in *Hackett* as doing work similar to "could" in *Liao*. *Compare Liao*, 910 F.3d at 721, 723 (Pennsylvania statute requiring only conduct that "that *could* threaten the child's physical or psychological welfare" was not a categorical "crime of child abuse" under INA (internal quotation marks omitted) (emphasis added)), *with Hackett*, 764 A.2d at 423 (upholding conviction under New Jersey child endangerment statute where defendant's "conduct *had the capacity* to impair or debauch the morals of a minor" (emphasis added)). With these similarities in mind, I believe *Liao* and its result control here.

Moreover, the conduct in *Hackett* did not obviously impair children's morals. A man "stood nude in his house, in open view through a front window . . . in the morning hours at the designated time children were assembling at a school bus stop located directly in front of his home." *Hackett*, 764 A.2d at 428. There were no allegations the man performed any sexual acts beyond standing nude. The New Jersey Supreme Court admitted this was "a thin . . . basis upon which a jury could have arrived at a guilty verdict on the endangering

2

charge." *Id*. Yet it nonetheless upheld the conviction, concluding the jury could have reasonably decided "that [the] defendant's conduct had the tendency to impair or debauch the morals of the children who observed his nudity." *Id.* at 429. So, as *Hackett* itself illustrates, a conviction under § 2C:24-4(a)(1) need not even require sexual conduct *with* the child— merely exposing the child to nudity can be enough. *Id*. at 428– 29. Such conduct does not "create a particular likelihood of harm to the child that rises above conduct that creates only the bare potential for nonserious harm" as required by *Liao*. 910 F.3d at 720 (internal quotation marks omitted) (alterations adopted).

The majority explains *Hackett*'s "capacity" language as "imprecise[]." Maj. Op. at 12. Tempting as this approach may be, subsequent New Jersey court decisions employed the "capacity" test of *Hackett*. *See State v. Bryant*, 15 A.3d 865, 874 (N.J. Super. Ct. App. Div. 2018) (stating that to sustain a conviction under § 2C:24-4(a), the defendant only needs to know his conduct "had the capacity to impair or debauch the child's morals"); *see also State v. M.V.F.*, No. A–2174–16T4, 2018 WL 1659699, at *4 (N.J. Super. Ct. App. Div. Apr. 6, 2018) (per curiam); *State v. L.H.*, No. A-2645-17T4, 2019 WL 2206400, at *3 (N.J. Super. Ct. App. Div. May 22, 2019) (per curiam). The majority dismisses *Bryant* as not "suggest[ing] that the court is departing from or changing the level of proof required by *Hackett*." Maj. Op. at 12. But this characterization underscores that New Jersey courts have continued to apply the broad standard laid out in that case: conduct with merely the "capacity" to debauch the morals of a child falls within the ambit of § 2C:24-4(a)(1).

\*      \*      \*      \*      \*

3

New Jersey's child endangerment statute, as interpreted by the State's Supreme Court, is to me too broad for a violation to qualify categorically as a "crime of child abuse" under the INA. Accordingly, I respectfully dissent.