**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————

No. 23-1084

—————

MONIR AHMMED,
                              Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

—————

On Petition for Review of a
Decision of the Board of Immigration Appeals
(A208-991-394)
Immigration Judge:  Charles M. Honeyman

—————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 17, 2023

—————

Before:  CHAGARES, *Chief Judge*, PHIPPS, and CHUNG, *Circuit Judges*.

(Filed: October 26, 2023 )

—————

OPINION*

—————

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PHIPPS, *Circuit Judge*.

Monir Ahmmed, a citizen of Bangladesh, who entered the United States on May 6, 2016, without inspection or parole, petitions to challenge the denial of his requests for relief from removal. During the removal proceedings, Ahmmed conceded removability but sought withholding of removal, asylum, and relief under the Convention Against Torture. He based those claims on the assertion that the Bangladesh Awami League, a majority party in Bangladesh, persecuted him because he was an official for a minority party, Jatiya Samajtantrik Dal. But this case does not turn on facts related to political violence in Bangladesh. Instead, it hinges on Ahmmed's credibility – or lack thereof.

The Immigration Judge found that Ahmmed was not credible, and without affording any weight to his testimony, determined that the remaining evidence did not satisfy Ahmmed's burden of proof for his requested relief. On administrative appeal, the Board of Immigration Appeals upheld that conclusion and issued a final removal order. Ahmmed timely invoked this Court's jurisdiction to review that order, *see* 8 U.S.C. § 1252(a)(1), and in reviewing the agency's adverse credibility finding under the substantial evidence standard, we will deny his petition.

When evaluating witness testimony, an Immigration Judge may give weight to any inconsistency, even one that does not go to the core of an applicant's claim. *Alimbaev v. Att'y Gen.*, 872 F.3d 188, 196–97 (3d Cir. 2017); 8 U.S.C. § 1158(b)(1)(B)(iii) (asylum); 8 US.C. § 1231(b)(3)(C) (withholding of removal). While an Immigration Judge may not give undue weight to "insignificant testimonial inconsistencies," the Immigration Judge is "normally in the best position to make credibility determinations." *Chen v. Gonzales*, 434 F.3d 212, 220 (3d Cir. 2005). For perspective, an adverse credibility finding is not the same as a finding of perjury or willful misrepresentation; it means only that the

witness is not believable in whole or in part. *See Garland v. Ming Dai*, 141 S. Ct. 1669, 1681 (2021) (explaining that a witness may lack credibility for reasons other than lying, such as when the testimony is "not 'worthy of belief'" (quoting Black's Law Dictionary 448 (10th ed. 2014))); *cf. Nunez v. Att'y Gen.*, 35 F.4th 134, 142 (3d Cir. 2022) (upholding an adverse credibility determination based on finding "self-serving" testimony).

The substantial evidence standard governs judicial review of agency findings of fact, including adverse credibility findings. *See Dia v. Ashcroft*, 353 F.3d 228, 247 (3d Cir. 2003) (en banc) (holding that adverse credibility determinations are findings of fact); *He Chun Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004) ("We review adverse credibility determinations for substantial evidence."). Under that standard, the agency's adverse credibility finding will be conclusive unless "a reasonable fact-finder would be *compelled* to credit his testimony." *Sunuwar v. Att'y Gen.*, 989 F.3d 239, 247 (3d Cir. 2021) (quoting *Hui Pan v. Holder*, 737 F.3d 921, 930 (4th Cir. 2013)); *Alexander-Mendoza v. Att'y Gen.*, 55 F.4th 197, 207 (3d Cir. 2022) ("To be so compelled, an alternative finding cannot be simply as persuasive as the agency's, or even marginally better – it must be so superior relative to the agency's finding that no 'reasonable adjudicator could have found as the agency did' over the alternative." (quoting *Ming Dai*, 141 S. Ct. at 1678)); *see generally Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) ("The agency's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" (quoting 8 U.S.C. § 1252(b)(4)(B)).

In finding that Ahmmed was not credible, the Immigration Judge relied on five inconsistencies in his testimony and two material omissions. Even though none of the inconsistencies or omissions directly concerns Ahmmed's testimony at the heart of his

requests for relief – the allegation that on three separate occasions he had been the victim of politically motivated violence in Bangladesh – many relate to central aspects of Ahmmed's application. *Cf. Sunuwar*, 989 F.3d at 250 (explaining that a trier of fact may assess credibility "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim" (quotation omitted)). Ahmmed gave inconsistent statements regarding the events surrounding the death of his brother; the person who gave him refuge while he was hiding; the duration of his hospital stay; his medical history; and his dates of service with the minority party. It may be that some of the inconsistencies and omissions would not independently justify an adverse credibility finding. Still, due to the independent force of three of the inconsistencies and the cumulative effect of all of them, substantial evidence supports the Immigration Judge's finding that Ahmmed is not credible.

The most significant inconsistency relates to the different dates and circumstances surrounding his brother's death. Ahmmed testified that members of the Awami League – the ruling party in Bangladesh – beat his brother, Babul Hussein, only once in June 2015, when he refused to disclose Ahmmed's whereabouts. But in an asylum application pre-dating his hearing, Ahmmed claimed Hussein was beaten and shot in October 2016, by men looking for Ahmmed. And in the narrative attached to that application, dated May 3, 2017, Ahmmed wrote that "[t]wo months ago my brother was attacked and tortured by the same group of people," placing the attack in March 2017. Appl. for Asylum & Withholding of Removal, Attached Statement (AR 310–11). Hussein died in Bangladesh in April 2017, allegedly due to injuries caused by the Awami League. Ahmmed now disclaims any knowledge of the attack date being in October 2016 and blames the inconsistencies on faulty translations and mistakes by counsel. While translation or

4

transcription errors are not implausible, and attorneys do from time to time make mistakes, those explanations, without further details, are not sufficient to "compel a reasonable factfinder to excuse the inconsistency." *Sunuwar*, 989 F.3d at 251. Inconsistencies about the infliction of severe injuries on an applicant's sibling, especially when the motive for the violence is the same political animus upon which an applicant bases his claims for relief, are not trivial.

Also, Ahmmed's account of where he took refuge from the Awami League for two years does not align with the account of one of the persons with whom he hid. Ahmmed testified that after the Awami League attacked him, he hid in two different locations, with "Maruf Hussein" and "Mohammed Abdul Bhakkar." Hrg. Tr. at 42–46 (AR 110–13). However, in an affidavit, his uncle, Marufur Rahman, averred that after that attack, Ahmmed hid with him for a few months. At the hearing, Ahmmed explained that "[i]n our country, we call them – call everyone by the first name." *Id.* at 44 (AR 111). He now insists that his proffered explanation clarified this issue, but it is not enough to compel the conclusion that he was credible.

The Immigration Judge similarly found inconsistencies in Ahmmed's account of the duration of his own hospital stay. Ahmmed testified that after a serious medical event, he stayed *continuously* in a hospital for two months. But according to his prior sworn narrative statement, he "was *in and out of* the hospital for the next two months." Appl. for Asylum & Withholding of Removal, Attached Statement (AR 310) (emphasis added). And the hospital records indicate that Ahmmed was discharged less than a month after being admitted. Ahmmed explains the discrepancy by suggesting the hospital must have "made a mistake." Hrg. Tr. at 73 (AR 140). But as with the other inconsistencies, to compel a contrary finding, Ahmmed "must do more than offer a

plausible explanation for his inconsistent statements." *Sunuwar*, 989 F.3d at 247 (quoting *Hui Pan*, 737 F.3d at 930).

The two other inconsistencies were relatively minor. First, Ahmmed gave two different accounts about the cause of his hospital stay in 2013. He originally testified that he had a stroke, but his narrative statement claimed he had a heart attack. At the hearing, however, Ahmmed stated that he believed that strokes and heart attacks were the same thing. Second, Ahmmed claimed he was selected as a party official from 2012 to 2013, while two sworn declarations indicate that he held a position until 2015. Ahmmed answered that he was appointed to a three-year term but went into hiding in 2013. But even crediting Ahmmed's explanations for these two inconsistencies would not make him credible as other cogent reasons supported the adverse credibility finding.

In a similar vein, the Immigration Judge relied on two omissions from Ahmmed's application for relief from removal in making the adverse credibility finding. *See id.* at 251 n.8 ("A lacuna in an applicant's testimony or omission in a document . . . can serve as a proper basis for an adverse credibility determination." (quoting *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 166 n.3 (2d Cir. 2008) (per curiam)). First, the Immigration Judge found that Ahmmed omitted threats the Awami League purportedly made against him before 2013 from his asylum application, Hrg. Tr. at 37–38 (AR 104–05), which Ahmmed says he did because he "just stated the main incidents," *id.* at 68 (AR 135). Second, Ahmmed testified that he omitted a fast-food business he had run from his application for a non-immigrant visa, which he explained the preparer did to increase his chances of admission even though the application itself represents no one assisted him in filling out the application. Even if these omissions would not independently justify an adverse credibility determination, they add to the entire assessment that Ahmmed could

6

not be reliably believed.  And, in any event, the other bases for the adverse credibility finding remain.

In sum, the inconsistencies in the record support the agency's conclusion that Ahmmed's account of events was not reliable, and the record does not compel the conclusion that the agency erred in that determination.  Because no other evidence independently established Ahmmed's burden of proof for his requested relief, we will deny his petition.