**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1105
_____

CLAUDIA YADIRA GARCIA-GOMEZ; E. S. A.-G.,
Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of a Decision of
the Board of Immigration Appeals
(Agency Nos. A208-278-732 & A208-278-731)
Immigration Judge:  John B. Carle
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 6, 2022
_____

Before: SHWARTZ, MATEY, and FUENTES, <u>Circuit Judges</u>.

(Filed: December 8, 2022)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

**SHWARTZ**, Circuit Judge.

Claudia Garcia-Gomez ("Garcia-Gomez") petitions for review of a Board of Immigration Appeals ("BIA") decision adopting the order of the Immigration Judge ("IJ") denying her and her daughter asylum. Because substantial evidence supports the BIA's decision denying asylum, and remand to consider an argument of imputed political opinion would be futile, we will deny the petition.

I

After entering the United States without authorization in 2015, Garcia-Gomez and her daughter, both natives and citizens of Honduras, were detained and issued Notices to Appear. Both were charged as removable noncitizens who were present in the United States without having been admitted or paroled. 8 U.S.C. § 1182(a)(6)(A)(i).

Garcia-Gomez conceded removability and submitted, among other things, an asylum application.[1] Garcia-Gomez asserted that she had suffered past persecution and had a well-founded fear of future persecution on account of her membership in the particular social group ("PSG") of relatives of Vicente and Wilmer Gomez, her grandfather and uncle and based upon an imputed political opinion.

At her merits hearing, Garcia-Gomez explained that her parents left Honduras for the United States when she was young, leaving her and her siblings in the care of their maternal grandparents. She further testified that her maternal grandfather was shot to

---

[1] Garcia-Gomez's minor daughter was listed as a derivative on the application for asylum.

death outside of their home in 2012 but that she does not know why he was killed or who was responsible for his death. Her brother testified that "narco traffickers" murdered their grandfather, but he did not know why. AR 219. After his murder, and her grandmother's death, she moved in with her uncle.

Garcia-Gomez testified that the police refused to investigate the murder, purportedly because they had a relationship with the organization responsible for her grandfather's death, and suggested that her family conduct its own investigation.

Her uncle then commenced an investigation. Approximately two years later, he received threatening letters. Garcia-Gomez testified that (1) her uncle was targeted because he was investigating the murder; (2) she did not see the letters; (3) none of the letters were directed at her or her brothers; (4) her uncle told her the letters stated the family would be killed if it did not pay extortion money; and (5) it was her understanding that she and her uncle were personally at risk. Her uncle reported these threats to the police, but they took no action. At least one dead body was thrown in front of her uncle's home, which caused her uncle to go into hiding.

Garcia-Gomez testified that: (1) she and her daughter fled Honduras shortly thereafter and her brothers left approximately five months later; and (2) her paternal grandmother remains in Honduras, her uncle lives in the same neighborhood in Honduras but had to associate himself with the people who were threatening him to remain safe, and another uncle, who also tried to investigate her grandfather's murder, received threats and now lives in Guatemala.

3

The IJ denied Garcia-Gomez's request for relief, concluding: (1) her experiences did not rise to the level of persecution, primarily because she was never physically harmed or directly threatened; (2) her fear of future persecution is not objectively reasonable, even if subjectively genuine, because (A) her claim is premised on a fear of extortion, harm, and revenge "at the hands of individuals who are criminals in Honduras," AR 113, which does not constitute a basis for a well-founded fear of persecution because the alleged persecutors' actions had no nexus to a protected ground; (B) she and her brothers were never harmed and her similarly-situated family members continue to live in Honduras without incident; and (C) it is unclear whether the threats her uncle received were related to her grandfather's death; and (3) there was no evidence that she or any family member was politically active, expressed any anti-gang, anti-criminal, or anti-cartel statements, or that any criminal cartel or gang had imputed or would impute such a political opinion on her.

The BIA adopted the IJ's decision, deemed Garcia-Gomez's asylum claim based on her anti-gang political opinion waived, and dismissed her appeal.

Garcia-Gomez petitions for review.[2]

---

[2] Garcia-Gomez does not challenge the denial of her applications for withholding of removal and protection under the Convention Against Torture.

II[3]

A

A noncitizen who enters the United States without permission is removable. See 8 U.S.C. §§ 1182(a)(6)(A)(i), 1227(a)(1)(A). A removable noncitizen may be eligible for asylum if she demonstrates that she is "unable or unwilling to return to, and is unable or unwilling to avail . . . herself of the protection of, [the country to which she would be removed] because of persecution or a well-founded fear of persecution on account of . . . membership in a [PSG], or political opinion." 8 U.S.C. § 1101(a)(42)(A); see 8 U.S.C. § 1158(b)(1)(B)(i); see also Garcia v. Att'y Gen., 665 F.3d 496, 503 (3d Cir. 2011).

B

1

The IJ applied the correct standard in determining that Garcia-Gomez did not suffer past persecution, and his findings were supported by substantial evidence. A noncitizen can establish past persecution if she shows (1) "that [s]he was targeted for mistreatment on account of one of the statutorily-protected grounds," (2) "that the incident, or incidents of mistreatment rise to the level of persecution," and (3) "that the

---

[3] The BIA had jurisdiction pursuant to 8 C.F.R. § 1003.1(b)(3). We have jurisdiction pursuant to 8 U.S.C. § 1252(a). "[W]here, as here, the BIA expressly adopts portions of the IJ's opinion, we review both the IJ and BIA decisions." Zhi Fei Liao v. Att'y Gen., 910 F.3d 714, 718 (3d Cir. 2018). "We review the BIA's legal determinations de novo," id. (quoting Sesay v. Att'y Gen., 787 F.3d 215, 220 (3d Cir. 2015)), and its "factual findings under the substantial evidence standard, which means that they are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Fei Yan Zhu v. Att'y Gen., 744 F.3d 268, 272 n.3 (3d Cir. 2014).

persecution was committed by the government or forces the government is either unable or unwilling to control." Thayalan v. Att'y Gen., 997 F.3d 132, 138 (3d Cir. 2021) (citations and internal quotation marks omitted).

"[P]ersecution" encompasses "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993). In evaluating whether an unfulfilled threat meets the definition of "persecution," we examine whether the threat is "concrete and menacing." Herrera-Reyes v. Att'y Gen., 952 F.3d 101, 108 (3d Cir. 2020).[4] An unfulfilled threat is sufficiently "concrete and menacing" to establish past persecution when the threat, "considered in the context of the full record," presents a "severe affront" to a petitioner's "life or freedom." Id. A pattern of threatening conduct "substantiated by physical or economic harm to herself, her family, her property, or those in a close relationship to her" constitutes past persecution, id. at 111, though proof of physical harm is not required, Blanco v. Att'y Gen., 967 F.3d 304, 311 (3d Cir. 2020).

The record does not compel the conclusion that Garcia-Gomez suffered past persecution. Of course, the murder of her grandfather was a harm to her family, but

---

[4] The IJ stated that threats must be "so menacing as to cause significant actual suffering or harm," AR 111, which differs slightly from the requirement that, for a threat to constitute persecution, it must be sufficiently concrete and menacing such that it constitutes a "severe threat to life or freedom," Herrera-Reyes, 952 F.3d at 109 (internal quotation marks omitted). The IJ's findings nonetheless show that the threats Garcia-Gomez described do not constitute persecution. Based upon a review of the cumulative events, the IJ found that Garcia-Gomez was never directly threatened nor physically harmed and these findings support the conclusion that the threats were neither concrete nor menacing as to her, and thus she did not suffer persecution as a matter of law.

Garcia-Gomez testified that he was murdered for unknown reasons, the threats came approximately two years later, neither she nor any family members were harmed in connection with the threats, and, importantly, no threat was directed toward her.

Thus, the record does not compel the conclusion that these events show that Garcia-Gomez suffered past persecution.

3

The record also does not compel the conclusion that Garcia-Gomez has a well-founded fear of future persecution based upon her membership in the PSG of family of her grandfather and uncle. A "well-founded fear of future persecution" requires both "subjective apprehension" and a showing "that a reasonable person in [the applicant's] position would fear persecution, either because [s]he would be individually singled out for persecution or because there is a pattern or practice in [her] home country of persecution against a group of which [s]he is a member,"[5] Huang v. Att'y Gen., 620 F.3d 372, 381 (3d Cir. 2010) (internal quotation marks omitted).[6] To satisfy the future persecution element, there must also be a "reasonable possibility" that she will suffer such persecution, 8 C.F.R. § 1208.13(b)(2)(i)(B).

---

[5] No party challenges the agency's findings that members of Garcia-Gomez's immediate family is a cognizable PSG, Garcia-Gomez is a member of that group, and she has a subjective fear of future persecution. We therefore examine only whether she has shown an objective fear of future persecution and whether there is a nexus between the feared persecution and her membership in the PSG. See S.E.R.L. v. Att'y Gen., 894 F.3d 535, 544 (3d Cir. 2018).

[6] Garcia-Gomez did not exhaust her argument that the IJ's decision failed to conform with the framework laid out in Huang, Lin v. Att'y Gen., 543 F.3d 114, 125 (3d Cir. 2008), and therefore we will not consider it.

Substantial evidence supports the BIA and IJ's conclusion that there is not a reasonable possibility that Garcia-Gomez would be singled out for persecution, or that there is a pattern or practice of persecution of her family members. Garcia-Gomez has not shown that she was ever directly threatened nor has she shown that she would be targeted by those threatening her uncles, given that the threats were due to her uncles' investigation into her grandfather's murder, an investigation in which she played no role. Indeed, only family members involved in investigating the murder reported receiving threats.

Substantial evidence also supports the BIA and IJ's determination that Garcia-Gomez has not shown a nexus between the persecution she fears and her PSG. To show that a nexus exists, a noncitizen must demonstrate that membership in the PSG is "at least one central reason" for the persecution. 8 U.S.C. § 1158(b)(1)(B)(i). "[A]sylum may not be granted if a protected ground is only an incidental, tangential, or superficial reason for persecution of an asylum applicant." Ndayshimiye v. Att'y Gen., 557 F.3d 124, 130 (3d Cir. 2009) (internal quotation marks omitted).

The record does not compel the conclusion that membership in Garcia-Gomez's family would be "one central reason" for any future persecution. As the IJ recognized, several of Garcia-Gomez's family members reside in Honduras and there is no evidence that they have suffered harm on account of their membership in the family. Although she testified that one uncle was threatened and moved to Guatemala, she also testified that this was a result of his own attempt to investigate her grandfather's murder. Thus,

8

substantial evidence supports the conclusion that her two uncles were targeted because of their investigations, and not because of their membership in the family. See, e.g., Shehu v. Att'y Gen., 482 F.3d 652, 657 (3d Cir. 2007) (finding substantial evidence that kidnapping and beatings following efforts to thwart a robbery did not establish that the alleged persecutors were motivated by animus toward the applicant's family, "particularly as [the applicant] adduced no evidence showing that family members not involved in thwarting the robbery were threatened"). Substantial evidence thus supports the finding that Garcia-Gomez did not establish a well-founded fear of future persecution based on her PSG.

C

The BIA erred in finding that Garcia-Gomez waived any claim that she had a well-founded fear of future persecution due to an imputed anti-gang opinion but remand to the BIA to consider this claim would be futile.

"Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." INS v. Ventura, 537 U.S. 12, 16 (2002). However, where "the BIA on remand would be unable as a matter of law to grant the relief sought," Ricketts v. Att'y Gen., 955 F.3d 348, 352 (3d Cir. 2020), we may decline to remand because remand would be futile.

Remand here would be futile. To establish a well-founded fear of persecution based on an imputed political opinion, Garcia-Gomez would have to show past persecution or a subjective and objective fear of future persecution, see Lukwago v.

9

<u>Ashcroft</u>, 329 F.3d 157, 174 (3d Cir. 2003), as well as that the persecutors "attributed a political opinion to [her], and acted upon the attribution." <u>Espinosa-Cortez v. Att'y Gen.</u>, 607 F.3d 101, 108 (3d Cir. 2010) (citations and internal quotation marks omitted). As discussed above, Garcia-Gomez has not established either past persecution or an objectively reasonable fear of future persecution. Additionally, there is no evidence indicating that anyone imputed an anti-gang political opinion to her or would act upon the attribution. <u>See, e.g.</u>, <u>Shou Wei Jin v. Holder</u>, 572 F.3d 392, 396 (7th Cir. 2009) (holding that "remand would be futile" because the petitioner "presented no evidence" that supported his argument under the correct legal standard). Thus, because the "BIA on remand would be unable as a matter of law to grant the relief sought," we need not remand to the BIA for further consideration. <u>Ricketts</u>, 955 F.3d at 352.

III

For the foregoing reasons, we will deny Garcia-Gomez's petition for review.